[Crim. No. 2667. In Bank.—October 25, 1924.]

## THE PEOPLE, Respondent, v. FRANCISCO CASADE, Appellant.

[1] CRIMINAL LAW—MURDER—INSTRUCTIONS—DISCRETION OF JURY.— In a prosecution for murder an instruction in effect that if the jury shall find the defendant guilty of murder in the first degree, it is within their discretion to pronounce such sentence as will relieve the defendant from the extreme penalty, but that this discretion is not an arbitrary one, and is limited to determining which of the two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed, but if the evidence shows the defendant to be guilty of murder in the first degree, but does not show some extenuating fact or circumstance, it is the duty of the jury to find a simple verdict of murder in the first degree and leave with the law the responsibility of fixing the punishment, does not im-

properly circumscribe and control the discretion given to the jury in such cases by section 190 of the Penal Code.

[2] ID.—ARREST IN COMMISSION OF UNLAWFUL ACT—INSTRUCTION—EVIDENCE.—In a prosecution for murder, where the evidence showed that the defendant, who had been arrested by a police officer, and was being taken to jail, stepped behind the officer and the latter turned in defendant's direction, exclaimed "Hey," and grappled him, obviously in an attempt to prevent the defendant from committing a felonious assault or to prevent the defendant from committing murder, this evidence justified an instruction in substance that if the accused was engaged in the performance of an unlawful act, and the deceased attempted in a lawful manner to prevent it and while so engaged the defendant in anger and solely for revenge, or to enable him to carry out his unlawful design, attacked the latter with a deadly weapon intending to kill him and did, under such circumstances, carry such intention into execution, the fact that defendant was in a passion would not mitigate or excuse such homicide, but the crime committed would in such a case be murder in the first degree, it being not less murder because the act was done suddenly after the intent to commit the homicide was formed, and it being sufficient that the malicious intention preceded and accompanied the act of homicide.

[3] ID.—ARREST—MISDEMEANOR—INSTRUCTION.—In such a case there was no prejudicial error in the refusal to instruct the jury that an officer has no authority to make an arrest for a misdemeanor without a warrant, unless the offense be committed in his presence, and that the defendant has the right to resist an unlawful arrest, and that an arrest made by an officer for a misdemeanor not committed in his presence is an illegal arrest, for, assuming that the arrest in its inception was without justification, the authority of the officer to make the arrest in the first instance was immaterial, in the light of the subsequent events.

[4] ID.—REPETITION OF INSTRUCTIONS—INTOXICATION.—The court is not required to state the law to the jury more than once, and in such a case there was no error in refusing an instruction proffered by the defendant on the subject of manslaughter which directed the jury to take into consideration the state of mind of the accused as to intoxication and his capacity to act maliciously, where the court had covered the subject in other instructions.

---

2. Condition of mind of slayer which reduces murder to manslaughter, notes, 134 **Am. St. Rep.** 726; 9 **Ann. Cas.** 929. See, also, 13 **Cal. Jur.** 609; 13 **R. C. L.** 785.

3. Homicide in resisting arrest as excusable on ground of self-defense, note, 4 **Ann. Cas.** 844. See, also, 13 **Cal. Jur.** 628; 13 **R. C. L.** 868.

4. See 13 **Cal. Jur.** 622, 666.

[5] ID.—SUFFICIENCY OF EVIDENCE.—In this prosecution for murder it is held that the evidence abundantly supported the conclusion of the jury finding the defendant guilty of murder in the first degree without recommendation.

[6] ID.—APPEAL—SUFFICIENCY OF EVIDENCE.—If the reviewing court is satisfied that there is sufficient evidence to justify a verdict of murder in the first degree, its inquiry on that point is ended.

(1) 30 C. J., p. 425, sec. 670.   (2) 30 C. J., p. 403, sec. 648. (3) 30 C. J., p. 366, sec. 617.   (4) 16 C. J., p. 1035, sec. 2475; p. 1063, sec. 2506.   (5) 30 C. J., p. 312, sec. 559.   (6) 30 C. J., p. 439, sec. 696.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mrs. Catherine A. McKenna and J. Irving McKenna for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and John L. Flynn for Respondent.

SHENK, J.—The defendant was accused by indictment found by the grand jury of Los Angeles County of the crime of murder. Following a verdict of guilty without recommendation he was sentenced to suffer the extreme penalty. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

On the twenty-ninth day of November, 1923, at about 4 o'clock in the afternoon the defendant became engaged in an altercation with a thirteen year old Mexican boy in or near the city of San Fernando. In the course of the dispute the defendant threatened to hit the boy. The boy's sister-in-law overheard the threat and called the police by telephone. About ten minutes later the deceased, Oscar Longfellow, a police officer, answered the call. On the arrival of the officer the defendant was standing in the middle of the street in front of the house where the boy was living. The officer approached the defendant and ordered him to go with him to the police station. The two were walking side by side until they reached a point on the

sidewalk in the business portion of the city immediately in front of a jewelry store. At that point the defendant stepped back and behind the officer, drew a revolver, which he had concealed upon his person, and fired three times. Two of the shots, one of which was fatal, entered the body of the officer and the third pierced the rim of the defendant's hat. The defendant dropped the gun and ran across the street, where he was captured by bystanders and taken to the city jail.

[1] On his motion for a new trial the defendant contended and on this appeal urges that the court gave improper instructions to the jury on the matter of recommendation of punishment and that the court erroneously refused other instructions requested by the defendant. The principal instruction complained of and which was given is as follows: "If the jury in this case should find the defendant guilty of murder in the first degree and they also shall find the further fact that there is some extenuating fact or circumstance in the case, it is within their discretion to pronounce such sentence as will relieve the defendant from the extreme penalty of the law. The penal code invests a jury in a criminal case for murder with the discretion, but the discretion is not an arbitrary one, and is limited to determining which of the two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed. If the evidence shows the defendant to be guilty of murder in the first degree, but does not show some extenuating fact or circumstance, it is the duty of the jury to find a simple verdict of murder in the first degree and leave with the law the responsibility of affixing the punishment." It is contended that this instruction is prejudicially erroneous as an attempt on the part of the court to circumscribe and control the discretion given to the jury in such cases by section 190 of the Penal Code, which reads: "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; . . . " It is urged that the instruction unduly and prejudicially affected the discretion to determine the penalty which said section has exclusively reposed in the jury. But by a long line of decisions in this state it has been held that the giving of said instruction is not

erroneous. In the early case of *People* v. *Jones,* 63 Cal. 168, it was held that the discretion vested in the jury by said section 190 was not an arbitrary one. The instruction complained of was taken word for word from *People* v. *Brick,* 68 Cal. 190 [8 Pac. 858], where it was held that the giving of the instruction was not error. This instruction was again under attack in *People* v. *Olsen,* 80 Cal. 122 [22 Pac. 125], and the same conclusion reached. Substantially the same instruction was under review in *People* v. *Bawden,* 90 Cal. 195 [27 Pac. 204], and this court following the earlier decisions declined to reopen the question. In *People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143], alleged error was predicated on the giving of this instruction, which is again set forth word for word on page 483, and the court, referring to the earlier cases, said: "The law of the state thus appears to be thoroughly settled to the effect that the instruction in question is not erroneous." It was likewise held not to be erroneous in *People* v. *Harris,* 169 Cal. 53 [145 Pac. 520], in *People* v. *Miller,* 177 Cal. 404 [170 Pac. 817], in *People* v. *Wolfgang,* 192 Cal. 754 [221 Pac. 907], and in *People* v. *Reid,* 193 Cal. 491 [225 Pac. 859]. Further consideration of the contention would seem to be foreclosed. The cases of *People* v. *Leary,* 105 Cal. 486 [39 Pac. 24], *People* v. *Camaunu,* 110 Cal. 609 [42 Pac. 1090], and *People* v. *Ross,* 134 Cal. 256 [66 Pac. 229], do not support the defendant's contention. In the Leary case it was not contended that the facts were not sufficient to justify the jury in finding the defendant guilty of murder in the first degree, but it was contended that the facts were not sufficient to warrant the jury in returning a verdict carrying the death penalty, and it was held that when the jury had exercised the discretion vested in it by the code section no power was reserved to the court to review its action in that respect. The same conclusion was reached in *People* v. *Ellis,* 188 Cal. 682 [206 Pac. 753]. In the Camaunu case and in the Ross case the court refused instructions proffered by the defendant tending to instruct the jury as to how it should exercise its discretion in regard to the punishment in case it should find the defendant guilty, and it was held that no error was committed.

In the case of *State* v. *Thorne,* 39 Utah, 208 [117 Pac. 58], also earnestly relied upon by the defendant, it was held that by the instruction there given the court undertook to

guide and direct the jury in the determination and exercise of its discretion in fixing the penalty. That instruction may not be said to be the same either in substance or effect as the one here complained of. As pointed out by the court the particular vice of that instruction was that it directed the jury that it was its duty to consider the question of the penalty "in the same manner" as any other question submitted to it, taking into consideration the objects and purposes of the criminal law. The phrase, "in the same manner," was held to include a consideration of "the issues, the burden, degree and *quantum* of proof, the effect and weight of the evidence, the requirement that the facts found must be established and justified by evidence, or the party having this burden must lose if he has not sustained it by the degree and *quantum* of proof required by law, etc." No such elements are involved in the instruction here complained of.

[2] The defendant further complains of the following which was embodied in an instruction given at the request of the prosecution: "If the accused was engaged in the performance of an unlawful act, and if the deceased attempted in a lawful manner to prevent the performance of such unlawful act, and if, while so endeavoring to prevent the same, the defendant in anger, and solely for the purpose of revenge, or to enable him to carry out his unlawful design, so interfered with by said deceased, attacked the latter with a deadly weapon intending to kill said deceased, and did, under such circumstances, carry such intention into execution, the fact that defendant was in a passion would not mitigate or excuse such homicide, but the crime committed would in such case be murder in the first degree. It is not less murder because the act is done suddenly after the intent to commit the homicide is formed. It is sufficient that the malicious intention precedes and accompanied the act of homicide." It is contended that there was no evidence in the case as to which this instruction could be applicable. The portion objected to is but a part of an instruction covering over seven pages in the transcript wherein the court at length expounded the law with reference to murder in the first degree, murder in the second degree, and manslaughter, and there was substantial basis in fact for including it as a part of the charge. The evidence showed

that when the defendant stepped behind the officer the latter turned in the defendant's direction, exclaimed "Hey," and grappled him, obviously in an attempt to prevent the defendant from committing a felonious assault in violation of section 217 of the Penal Code or to prevent the defendant from committing murder. The defendant, therefore, was engaged in an unlawful act, to wit, a felony, and the deceased was attempting in a lawful manner to prevent the performance thereof. The instruction was therefore applicable to the facts.

[3] Prejudicial error is asserted because of the refusal of the court to instruct the jury that an officer has no authority to make an arrest for a misdemeanor without a warrant, unless the offense be committed in his presence; that the defendant has the right to resist an unlawful arrest and that an arrest made by an officer for a misdemeanor not committed in his presence is an illegal arrest. There was no error in refusing these instructions. Assuming that the arrest in its inception was without justification in that the defendant's threat to harm the boy was not made in the officer's presence, it would not follow that the defendant would be justified in murdering the officer in an attempt to release himself from such custody. In the light of subsequent events the authority of the officer to make the arrest in the first instance became an immaterial question (*People* v. *Wolfgang, supra*).

[4] The defendant offered an instruction on the subject of manslaughter embodying therein the statement that the jury could take into consideration the state of mind of the accused, as to intoxication and his capacity to act maliciously. The court refused the instruction as having been covered by other instructions given. The refusal is claimed as error. Other instructions which were given fully covered the subject of manslaughter and the consideration which the jury could give to voluntary intoxication as bearing on the purpose, motive, or intent of the defendant and in determining the degree of the crime. The court was not required to state the law to the jury more than once (*People* v. *Feld,* 149 Cal. 464 [86 Pac. 1100]; 8 Cal. Jur. 314, and cases cited).

[5] The question of the insufficiency of the evidence to justify the verdict was first urged by defendant's counsel

on oral argument.   We have examined the record with care and find that the evidence abundantly supports the conclusion of the jury.   One witness testified that he saw the defendant step behind the officer and fire three shots.   He then approached the defendant, who said to him, ''Why don't someone shoot me now?''   Another witness testified that when he was about twenty-five feet away from the defendant he saw him step back, draw the gun and fire at the officer; that the officer turned back, said ''Hey,'' and tried to grapple with the defendant.   During the struggle the succeeding shots were fired and the officer sank to the sidewalk.   Another witness testified that he saw the shooting from a point about fifteen or twenty-five feet away and that he saw the defendant pull the trigger three times. Another witness testified that he saw the struggle, saw the defendant drop the gun and run across the street.   Still another witness testified that after the shooting the defendant came toward him, that he captured the defendant and that the defendant immediately said to him, ''Somebody shoot me.''   The chief of police testified that when the defendant was brought to the jail he asked him where he kept the gun and the defendant said ''Right here''; that he then opened the defendant's clothing and found the imprint of the gun on the defendant's body; that he asked the defendant about the shooting but the latter refused to talk about it.   In his dying declaration the deceased said that the defendant shot him twice.   He further stated: ''I had arrested him.   I was walking down Porter Avenue in front of Hillenbrand's jewelry shop.   Casade jumped behind me and began shooting.   I turned and grabbed him and took the gun away from him.   I tried to shoot but I was getting too weak.   I did not shoot.   I yelled at a bunch of men across the street to get him.''   It is suggested by counsel for the defendant that it was highly improbable that the defendant could have done the shooting for the reason that one of the bullets passed through the rim in the rear portion of the defendant's hat, but this circumstance is explained in the testimony of the chief of police who stated without objection that the deceased said that at the beginning of the struggle he forced the defendant's hand upward in an endeavor to disarm him and that the first shot went through the rim of the defendant's hat.   There was

no evidence to the contrary. The defendant did not take the stand and the testimony in his behalf was confined to three character witnesses.

[6] It is asserted by defendant's counsel that the defendant was intoxicated at the time of the shooting, that the evidence is without conflict on that subject and that therefore he was not deserving of the extreme punishment. The record discloses a very substantial conflict in the evidence on the question of defendant's intoxication. Two witnesses testified that he appeared to be intoxicated. Another witness testified that he was not intoxicated and it was in evidence that the defendant prior to the trial stated that he had consumed a pint and a half of wine at his meal at noon that day, which was four hours before the shooting, that he was not drunk when the shooting occurred, and that he remembered clearly everything that had happened that day. Furthermore, the effect on their verdict of the intoxication of the defendant, if such existed, was for the jury to determine under section 22 of the Penal Code. The question of whether the lighter punishment should have been inflicted was exclusively for the jury's determination. "If the reviewing court is satisfied that there is sufficient evidence to justify a verdict of murder of the first degree, its inquiry on that point is ended" (*People* v. *Ellis, supra*). The evidence was sufficient to justify the verdict herein and as we find no error in the record the judgment and order are affirmed.

Seawell, J., Myers, C. J., Lawlor, J., Waste, J., Lennon, J., and Richards, J., concurred.

Rehearing denied.

All the Justices concurred.