[Crim. No. 4219. In Bank.—May 8, 1939.]

THE PEOPLE, Respondent, v. WILBERT F. KING et al., Appellants.

Robert M. Wash and Gerald H. Catania for Appellants.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, Dan F. Conway, District Attorney, and S. L. Heesinger, Jr., Deputy District Attorney, for Respondent.

THE COURT.—In an amended indictment returned by the grand jury of Fresno County, the defendants were jointly charged with the crimes of murder and robbery, each offense being separately stated. The defendant Anderson was also

charged with having suffered a prior conviction of felony in the state of Nevada in 1936, for which he served a term of imprisonment. Each defendant entered a plea of not guilty to both counts. Defendant Anderson admitted the prior conviction. Subsequently, the defendants withdrew their pleas to the robbery count and entered pleas of guilty thereto, the degree of which was fixed by the trial court as of the first. At the conclusion of the trial, verdicts were returned by the jury finding each defendant guilty of murder of the first degree without recommendation. Judgments were accordingly entered imposing the death penalty upon the defendants. The cause comes before us on appeals from the judgments and the orders denying a new trial.

The facts surrounding the commission of the robbery and murder are simple of statement and free of dispute. It appears that the defendants had been friends for a period of several years and for a few months prior to the perpetration of the crimes here involved they had roomed together in the city of Fresno, where, by their own admission, they had jointly participated in a series of thefts and robberies culminating in the robbery and murder of one G. E. Ward at approximately 10:30 P. M. on July 17, 1938. Defendants freely admitted in confessions made by them prior to trial and when on the witness stand in their own defense, that as the victim Ward brought his automobile to a stop in response to an automatic traffic signal at an intersection of two streets in the city of Fresno, they stepped from the curb where they had been standing and forcibly entered the victim's car. Defendant Anderson, flourishing a loaded gun in the victim's face, opened and entered the right door of the car while the defendant King went around the rear of the car and opened and entered the left door. Ward was pushed over between them on the seat and the defendant King immediately took over the operation of the car. Almost simultaneous with Anderson's entry of the car the gun held by him belched forth several shots, five of which entered Ward's body and according to medical testimony, caused his demise shortly thereafter. Upon entering the car and shooting its operator, the defendants, with King at the wheel, drove the car some distance, robbed the victim of seventy dollars, which they admittedly divided, removed the victim from the car, and then proceeded on to another point where they abandoned the vehicle. Anderson was later apprehended in Las

Vegas, Nevada, and King was subsequently taken into custody in Provo, Utah.

The presence of several persons at or near the intersection where the defendants entered Ward's car and shot him did not deter them in the carrying out of their admittedly prearranged plan to forcibly enter an automobile. These persons testified as prosecution witnesses. The testimony shows and the defendant King admits that he had purchased the gun about one month prior to the homicide. It had been used by them in their earlier thefts and robberies, each having apparently indiscriminately carried it. On cross-examination, the defendant Anderson testified that as he entered Ward's car he "told him this was a hold up." To more fully state the facts would add nothing to this opinion for it must now definitely appear that the confessed and admitted homicide was perpetrated in the commission of a robbery, and, under the provisions of section 189 of the Penal Code, can be designated only as murder of the first degree. We therefore direct our attention to the contentions of the defendants that certain alleged errors occurring during the conduct of the trial served either to deny them a fair trial or to prejudice them before the jury. The defendants have filed separate briefs but such of the contentions as are common to both shall, of course, receive joint attention.

Both defendants urge that the trial court erred in refusing to give an instruction upon murder of the second degree. They concede that the refusal of the court below "was based upon the premise that the evidence conclusively disclosed that the homicide was committed in the commission or the attempt to commit the crime of robbery, and was therefore murder in the first degree or nothing". As already indicated, we are in accord with this asserted "premise" of the trial court and we cannot accept the defendants' theory that they were not engaged in a robbery or attempted robbery for the reason that the shooting preceded by a short interval of time the actual taking of the money from the person of the victim. The facts above stated clearly disclose that the shooting was simultaneous with the forcible entry and assumption of possession of the victim's car which, in turn, constituted but one of the preliminary steps in the consummation of the "hold up" or robbery which one of the defendants announced to the victim as they entered his car. In other words, the forcible entry of the car and the

shooting were the initial overt acts in the actual perpetration of an admittedly preconceived "hold up" of any person who might be unfortunate enough to happen along. However, even if the defendants had terminated their plan after entering the car and shooting its operator and thereafter had made no effort to take his money, the homicide would still constitute murder of the first degree because committed in an attempt to perpetrate a robbery. (Sec. 189, *supra; People* v. *Anderson,* 1 Cal. (2d) 687, 689 [37 Pac. (2d) 67].) There was no occasion in this case for the giving of an instruction on murder of the second degree and the contention of defendants is wholly lacking in merit.

Both defendants complain of an instruction which, in effect, told the jury that in the event it returned a verdict of murder of the first degree and found "some extenuating fact or circumstance in the case" it could in its discretion relieve the defendants, or either of them, from the extreme penalty of the law but that such discretion was "not an arbitrary one" and should not be exercised in the absence of "some extenuating fact or circumstance". It is now urged, as it has been on many other occasions, that section 190 of the Penal Code does not limit the right of the jury to fix the punishment at life imprisonment to those cases wherein extenuating circumstances appear but that, on the contrary, the jury is free to prescribe such punishment, in its discretion, in any and all cases. Though perhaps not in literal compliance with the provisions of section 190, *supra,* the instruction is practically identical with one given in *People* v. *Rogers,* 163 Cal. 476, 483 [126 Pac. 143], in which case it was held that "The law of this state thus appears to be thoroughly settled to the effect that the instruction in question is not erroneous". On many occasions the giving of a similar instruction has been held not to constitute error. (*People* v. *Bawden,* 90 Cal. 195 [27 Pac. 204]; *People* v. *Casade,* 194 Cal. 679, 682 [230 Pac. 9]; *People* v. *Harris,* 219 Cal. 727, 733 [28 Pac. (2d) 906]; *People* v. *Goodwin,* 9 Cal. (2d) 711, 715 [72 Pac. (2d) 551].) The record discloses that defendants are guilty of a cold-blooded murder. There can be no question in the mind of one who reads it that there are no circumstances which would have justified the jury in affixing anything less than the extreme penalty of the law.

In so stating, we are not unmindful of the attempt to show upon the trial, and of the argument here to the effect that there was no intent to shoot the victim but that the gun by reason of the wearing of its parts was capable of being automatically discharged several times by a single pressure on the trigger. Even if we were to concede that the gun was a true automatic in the sense that one pulling of the trigger would cause all shells in the chamber to be discharged in rapid succession, we fail to perceive wherein the defendants would be benefited for someone had to apply the initial pressure to the trigger to start such automatic firing and it is nowhere shown or contended that anyone but the defendant Anderson was holding and pointing the gun at the deceased at the time of the shooting. Nor does the fact that Anderson testified that he did not "intend to fire the gun" alter the situation. (*People* v. *Anderson, supra.*) Moreover, we are of the view that the record here fails to disclose that the gun employed by the defendants was a true automatic in the sense above mentioned. A prosecution expert testified that he fired the death gun innumerable times and that it was necessary to pull the trigger each time a shell was to be discharged. Generally speaking, the evidence of the defendants along this line had to do with guns other than the one used by the defendants, though of the same make or type, or had to do with guns on which the "sear" had become so worn or had been so filed or honed as to cause automatic firing with a single pressure on the trigger. As stated, we are of the opinion that this condition was not shown to exist in the death gun but, as also stated, even if it had been shown, we fail to perceive wherein the defendants could derive any comfort from the fact.

The defendants next urge that the district attorney was guilty of prejudicial misconduct in his argument to the jury. Both complain of substantially the same portions of the argument wherein they were castigated and characterized in decidedly uncomplimentary terms. While we have frequently indicated that a prosecuting officer should not overstep the bounds in his argument to the jury we are of the view that no prejudice could have resulted from the remarks here complained of even if we should concede, without deciding, that said remarks were intemperate and might well have been left unuttered. In our opinion, the result in this case would have been the same if there had been no

argument for, as indicated, the evidence discloses a planned robbery in the commission of which the victim was fatally shot by the perpetrators thereof. In addition, the record fails to show that either defendant objected to any of the remarks or requested that the jury be admonished to disregard them with but one exception and in this particular the district attorney asked the jury to disregard the remark and the court so instructed. In the absence of objection and request that the jury be admonished, the defendants are now foreclosed from complaining. (*People* v. *Green, ante,* p. 37 [87 Pac. (2d) 821] ; *People* v. *Gist,* 28 Cal. App. (2d) 287 [82 Pac. (2d) 501] ; *People* v. *DuBois,* 16 Cal. App. (2d) 81, 87 [60 Pac. (2d) 190].)

When on the witness stand in his own defense, the defendant King testified that a short time prior to the robbery and fatal shooting of Ward he had "engaged in several hold ups". Upon cross-examination, the district attorney brought out, over objection, the location and character of these several "hold ups" and that the defendants on these occasions had employed and flourished the gun here involved. It is now urged that this was improper cross-examination and that the recitation of the details of these earlier offenses did not serve to prove any of the issues here presented. We entertain no doubt as to the propriety of the cross-examination as to matters admittedly generally divulged on direct examination. (*People* v. *Mammilato,* 168 Cal. 207, 213 [142 Pac. 58] ; *People* v. *Gallagher,* 100 Cal. 466, 475 [35 Pac. 80].) In addition to many other reasons that might be advanced in support of the materiality and relevancy of the evidence adduced on such cross-examination, it may be stated that it was there disclosed that the defendants had on these several prior occasions employed the death gun to intimidate their victims and accomplish their objective and without any accidental or unintentional discharge thereof. In other words, the continued use of the gun by the defendants without undue happening tends definitely and strongly to overcome and destroy the theory here advanced that the gun by reason of wear or other causes was practically "hair trigger" in character and capable of discharging its entire contents of shells without exterior assistance. Moreover, the prosecution was free to establish that the robbery and fatal shooting of Ward were part of a general plan or scheme to

commit robberies. (*People* v. *Thorne,* 10 Cal. (2d) 705 [76 Pac. (2d) 491].)

The defendant King also urges that the trial court erred to his prejudice when in response to a query of the jury "whether the verdict has to be the same for each defendant", the court replied "No, not necessarily. The verdicts can be different for the two different defendants, if that is what you had in mind. . . . In other words, each defendant is to be considered as if he were alone in the case, although they are charged jointly. The consideration of the jury should be as to each separate defendant." It is now contended that the words "No, not necessarily" indicated to the jury that the verdicts should be the same. The point lacks every vestige of merit. Counsel did not object at the time and, in fact, now concedes that "the instruction clearly states the law". It is difficult to conceive how the statement of the matter could be improved. At the time, the trial judge inquired if counsel desired "to add anything further to the explanation of the court" whereupon counsel for both defendants stated "I think that is correct".

It is urged by the defendant Anderson that he was prejudiced by the district attorney inquiring, and the trial court permitting him to inquire, whether he (Anderson) was ever convicted of a felony. He concedes that ordinarily when a defendant in a criminal case takes the witness stand he may be impeached, like any other witness, under the provisions of section 2051 of the Code of Civil Procedure. But, he contends, where, as here, the defendant confesses to the crime and admits its commission on the witness stand, the prosecution may not question his credibility. We do not understand the rule to be so limited. Contrary to the defendant's statement we do not find in the record that the district attorney "stipulated" to the truth of the confession. He merely offered it in evidence as the voluntary extra-judicial statement of the defendant and was free to challenge the defendant's credibility under the established rules of evidence.

As stated at the commencement of this opinion, the evidence against both defendants is clear and undisputed that while engaged in robbing the deceased they mortally wounded him. They fled the scene and were later apprehended out of the state and returned here where they had a fair trial and

were properly convicted. We find nothing in the record calling for a reversal.

The judgments and orders are, and each is, hereby affirmed.

Houser, J., concurred in the judgments.