Ricky **MURRAY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 66403.

Court of Criminal Appeals of Texas, Panel No. 3.

April 22, 1981.

Rehearing Denied June 3, 1981.

Nathaniel G. Rhodes, Corpus Christi, for appellant.

Thomas L. Bridges, Dist. Atty. and Joel B. Johnson, Asst. Dist. Atty., Sinton, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction of possession of methamphetamine. The court assessed punishment at two years, probated.

On November 16, 1979, appellant was stopped by Ingleside police officer Malcolm Anderson for speeding (31 miles per hour in a 20 mile per hour flashing school zone). Upon appellant's being unable to produce a valid driver's license, he was placed under arrest and taken to jail. Upon arrival at the jail, appellant called his sister to come down and post bail. After about forty-five minutes, the sister had not yet arrived so the officers began to process appellant into jail. During the course of this processing, appellant was required to remove all objects from the clothing he wore. A plastic bag containing methamphetamine was discovered.

Appellant contends, and the State agrees, that the flashing signals marking the school zone were not, at that time, legally authorized. Approximately three weeks prior to the stop of appellant, the City had enacted a new city code which repealed all previous ordinances relating to traffic control. Under the new ordinance, the speed limit on the road where appellant had been stopped was thirty miles per hour. Appellant concludes that, since the State could not have convicted him for the offense for which he was initially arrested, the arrest was illegal and the methamphetamine discovered as a product of that arrest was not admissible against him.

With appellant's contention, we cannot agree. In *Soileau v. State*, 156 Tex.Cr.R. 544, 244 S.W.2d 224 (1951), this Court held that the failure to show that a traffic control device was properly authorized did not vitiate the probable cause for a stop, and that such was authorized by Article 6701d, Sections 30–32 and 153, V.A.C.S. See also, *Drago v. State*, 553 S.W.2d 375 (Tex.Cr. App.1977), and *Praska v. State*, 557 S.W.2d 83 (Tex.Cr.App.1977). Following the lawful stop of appellant, the officer had probable cause to arrest appellant for failure to produce a valid driver's license. Article 6687b, Section 13, V.A.C.S., and Article 6701d, Section 147, V.A.C.S. The discovery of the methamphetamine during the booking process at the jail was not the product of an illegal arrest, or an illegal search, and was properly admitted into evidence. *Heck v. State*, 507 S.W.2d 737 (Tex.Cr.App.1974), and *Pulido v. State*, 503 S.W.2d 578 (Tex.Cr. App.1974).

The judgment is affirmed.

TEAGUE, Judge, dissenting.

By the opinion, I do not find any basis in fact or law for this appellant to be "booked" into the Ingleside jail for minor traffic offenses. *Pulido v. State*, Tex.Cr. App., 503 S.W.2d 578 (1974), is not in point for there the defendant was originally charged with attempted burglary, not speeding and failure to display a valid driver's license. Likewise, *Heck v. State*, Tex. Cr.App., 507 S.W.2d 737 (1974), is not in point for there the appellant Heck was originally arrested for public drunkenness, not speeding and failure to display a valid driver's license.

I dare say there is not a member of this Court who, if their spouse or child had been arrested for such minor traffic offenses as here, speeding and failure to display a valid driver's license, would not be morally outraged if, simply because they did not get to the jail fast enough, they learned after being summoned and arrival, their loved one was put behind steel bars, after being searched. The "excuse" given by the opinion for the "booking" was that the police had waited for 45 minutes and appellant's sister had not arrived to post bail. The majority reasons, therefore, the police had no alternative but to "book" the appellant. That reason is not sufficient in my view to eliminate and quash the appellant's constitutional right to be free from unreasonable search and seizure. There is simply no justification under the facts presented for "booking" appellant into jail. Consequently, it was unreasonable and a violation of the defendant's right to privacy under the Texas Constitution. It was unnecessary, by the facts here, for him to be "booked" into jail by the police. The argument of lack of manpower and standard procedure fails as they cannot be used to eliminate an individual's constitutional right to be free from unreasonable search and seizure.

But, I ask: "Why was the appellant taken to the jail in the first place?" It is not stated that appellant did not have sufficient identification available. He had relatives in the area and for all we know was a local resident of Ingleside. For the offense of speeding, see Art. 6701d, Sec. 148, V.A.T. C.S., it is *mandatory*, with but two exceptions not shown applicable here, for a person to be released by him merely signing a written notice to later appear in court. There is no showing that appellant did not qualify for a personal recognizance type bail bond, see Art. 17.031, V.A.T.C.C.P. Contrary to law, he was not taken by the police before a magistrate. See Art. 14.06, V.A.T.C.C.P., and Art. 6701d, Sec. 147, supra. In fact, there is nothing shown by the facts why a summons was not the proper alternative in this cause. In short, why was this appellant not simply issued traffic citations for these two minor traffic offenses rather than being taken to the jail house?

The precious non-material commodity of privacy is far too great to allow the police to act as they did here, for we all know that after the arrest and "booking" for a minor traffic offense, then comes the "pat down search," then the "pocket search," then the "clothing search," then the "strip search," then the "body cavity search," and, lastly, the "body intrusion search." It is far better, in my view, to excise the pimple early to eliminate the necessity of later performing surgery on the boil. To uphold what occurred here is to do nothing but allow the pimple to fester and evolve into a boil.

In dissenting to the decision of the majority, I hold little sympathy for Murray, who was convicted of the offense of possessing methamphetamine, a common drug found in our drug oriented society as reflected by the millions, no billions, of dollars the American public expends yearly in drug stores for both prescription and non-prescription drugs with same or similar contents as here for a variety of common ailments. Although I fail today in persuading my fellow judges on this panel to see the light, perhaps hopefully a majority of the members of this Court will join me at a later date to protect citizens of this State from being processed through our station houses and jails for minor traffic offenses, and to prevent our fellow citizens from being subjected to the humiliation, degradation and embarrassment of the "booking"

process. If we will simply step forward today and put the stamp of disapproval on such actions as found here, then I believe it will deter in the future "booking" a defendant for minor traffic offenses, which to me constitutes an unreasonable invasion of one's privacy and, of course, we won't have to worry about the boil at a later date. For if we do not, tomorrow, rather than Murray, it may be you or your loved ones who experience the "booking" operation for minor traffic offenses.

I respectfully dissent.

Before the court en banc.

CLINTON, Judge, concurring on Overruling Without Written Opinion Appellant's Motion for Leave to File Motion for Rehearing.

I concur in the action of the Court only because it is uncontroverted that upon being stopped for speeding appellant failed to produce a valid driver's license and thereby gave cause for a custodial arrest.