Donald Delana SNYDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 65864.

Court of Criminal Appeals of Texas, En Banc.

Jan. 20, 1982.

was convicted in a trial before the court following his plea of nolo contendere. Punishment was assessed at three years, probated.

On original submission, a panel of this Court, in a per curiam opinion, 618 S.W.2d 773, affirmed appellant's conviction. It was found that nothing was presented for review with regard to appellant's two grounds of error in which he maintained the court erred in overruling his motion to suppress based upon an alleged illegal search and seizure. The panel found:

"No evidence seized pursuant to the challenged search was introduced, and no such evidence was used to support appellant's conviction. Where no evidence obtained as a result of a search is introduced in evidence, no error with respect to such search is presented for review. . . . The appellant's judicial confession is alone sufficient to sustain his conviction on a plea of nolo contendere."

In his motion for rehearing, appellant maintains his judicial confession consisting of a stipulation does not constitute sufficient evidence to support his conviction. He urges that evidence from the challenged search was introduced and used to support his conviction. Appellant therefore contends that the question regarding the overruling of the motion to suppress has been preserved for review.

The indictment in the instant cause alleges in pertinent part that on September 7, 1979, appellant did:

"... *intentionally and knowingly* possess a controlled substance namely, METHAMPHETAMINE." (Emphasis added).

The stipulation which appellant signed was admitted into evidence. That stipulation states in part:

"I, the Defendant ... confess the following facts: The substance obtained from my billfold on September 7, 1979 in Harris County, Texas was a controlled substance, to wit, Methamphetamine."

A comparison of the indictment with the stipulation reveals that the stipulation

David P. Zavoda, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Ray Elvin Speece and Mary Milloy, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of methamphetamine. Appellant

fails to recite that appellant intentionally and knowingly possessed the contraband. The Controlled Substances Act, Art. 4476–15, Sec. 4.04(a), provides that a person commits an offense if he knowingly or intentionally possesses a controlled substance. Methamphetamine is included within Penalty Group 1 of the Act. See Art. 4476–15, Sec. 4.02(b)(6). The stipulation signed by appellant therefore fails to contain an element of the offense by virtue of its failure to recite that appellant intentionally and knowingly possessed the contraband.

In *Potts v. State*, Tex.Cr.App., 571 S.W.2d 180, it was found that a judicial confession entered in a guilty plea proceeding was insufficient evidence to support the defendant's conviction. There, the confession omitted an element of the offense. as alleged in the indictment. However, it was further noted that within the judicial confession, the defendant stated that she committed the offense "as charged in the indictment." This Court concluded that the "catch-all" confession was sufficient evidence to support the defendant's conviction. Id. at 182. Likewise, in *Dinnery v. State*, Tex.Cr.App., 592 S.W.2d 343, it was found that the defendant's testimony that he had read the indictment and that it was "true and correct" constituted a judicial confession which was sufficient evidence to support his guilty plea conviction.

 The instant cause does not contain a "catch-all" stipulation or a judicial confession consisting of an oral affirmation that allegations of the indictment are "true and correct." In the absence of such, appellant's stipulation as quoted above, is not sufficient evidence, standing alone, to support his conviction.

 The record in the instant cause reveals that the court initially held a hearing on appellant's written motion to suppress. After that motion was overruled, appellant entered his plea of nolo contendere. Such a plea has the same legal effect as a plea of guilty. See Art. 27.02(5), V.A.C.C.P.

With regard to evidence in support of that plea, the record reflects as follows:

"THE COURT: We have just heard a motion to quash any evidence because of an unlawful search and seizure, and you were present all during that hearing?
"DEFENDANT: Yes sir.
"THE COURT: And you want to submit your case in lieu of a stipulation of evidence, on that evidence?
"DEFENDANT: Yes sir.
"THE COURT: And this occurred in Houston, Harris County, Texas?
"DEFENDANT: Yes sir.
"THE COURT: And I understand that it is your stipulation that the controlled substance involved here was methamphetamine?
"DEFENDANT: Yes sir.
"THE COURT: He needs to sign a written stipulation on that. All right, then, on the evidence I have heard together with the stipulation that the controlled substance was methamphetamine I find you guilty. . . ."

The record therefore reveals that the court based its finding of guilt on appellant's stipulation and the evidence from the suppression hearing. As noted above, appellant's stipulation alone, is not sufficient to support his conviction.

The record in the instant case reveals that a plea bargain agreement existed between the State and appellant. The terms of that agreement were that "if [the] motion [to suppress is] denied, D.A. will recommend and Defendant will accept 3 yrs. T.D.C. probated . . . with Defendant reserving right to appeal search question . . . ." This appeal is therefore governed by Art. 44.02, V.A.C.C.P., which provides:

"A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided, however, before the defendant who has been convicted upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attor-

ney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial...."

In *Galitz v. State*, 617 S.W.2d 949, the Court noted that the following procedural requirements must be met under Art. 44.02, supra, in order for a defendant who pleads guilty to obtain a review on an adverse ruling on a pretrial suppression motion:

"... (1) existence of a plea bargaining agreement with the State; (2) punishment assessed by the trial court at or within that recommended by the prosecutor and agreed to personally by the defendant; (3) the basis of the appellate ground of error has been presented in writing, pretrial, to the trial court for consideration *OR* the trial court has given permission to pursue an appeal in general or upon specific contentions. Absent the showing of all three of these jurisdictional requisites there is no power extant in this Court to take cognizance of issues 'appealed' by appellants so situated...." (Footnotes omitted) (Emphasis in original) Id. at 951 and 952.

■ Further, in *Ferguson v. State*, Tex. Cr.App., 571 S.W.2d 908, it was held that if the guilty plea is supported by evidence independent of the matter contested in the pretrial motion, then any erroneous ruling on that motion does not vitiate the conviction. Likewise, when evidence from a contested search is not introduced by the State, the trial court's erroneous ruling on the admissibility of such evidence will not serve as the basis for a reversal on appeal. *Brewster v. State*, Tex.Cr.App., 606 S.W.2d 325.

■ However, when the contested suppression evidence is admitted at trial and supplies the proof necessary to support the guilty plea conviction, the appellate court will review an adverse ruling on the pretrial suppression motion under Art. 44.02, supra. For example, in *Galitz v. State*, supra, the defendant was convicted upon his plea of guilty of unlawfully carrying a weapon on premises licensed to sell alcoholic beverages. In support of the plea, the State introduced

the examining trial testimony of the officers who found the weapon. The handgun was not admitted into evidence. The defendant urged that in spite of his plea of guilty, he had nevertheless preserved his right to appeal the trial court's action in overruling his motion to suppress. This Court found that the alleged error had been preserved for review under Art. 44.02, supra, and stated:

"In the instant case, however, *nothing* was admitted into evidence other than the transcribed examining trial testimony of the officers who escorted, arrested and ultimately searched appellant. Because this evidence was both a fruit of the contested search, and the only evidence which supplied proof of every element of the offense, appellant has preserved his right to have this Court determine the merits of his pretrial motion to suppress evidence in the felony case and we so hold...." (Emphasis in original) Id. at 956.

In the instant cause, appellant filed a pretrial written motion to suppress which was overruled by the court. There was a plea bargain agreement between the State and appellant. The punishment assessed by the court did not exceed the terms of that agreement. Finally, the contested evidence was admitted and supplied the proof necessary to support appellant's conviction.

■ We find that appellant has preserved his right to have this Court determine the merits of his pretrial motion to suppress. Appellant maintains the search of his wallet which produced the contraband was unlawful because the officer did not have probable cause or a search warrant. Although the contraband was not admitted into evidence, the testimony of the officer who discovered the methamphetamine was a fruit of the contested search. See *Brewster v. State*, supra; *Galitz v. State*, supra.

Officer L. D. Garrison, of the Houston Police Department, testified that on September 7, 1979, he stopped a car driven by appellant because the car did not have

brake lights. After stopping the car, Garrison found that appellant did not have a valid driver's license and that the inspection sticker on the car had expired. Appellant was then placed under arrest and the search of his person which followed included appellant's wallet. Prior to the search, the wallet had been in appellant's pocket. Inside the wallet, Garrison found a white substance wrapped in clear plastic which he "suspected was some type of narcotic." As noted above, appellant stipulated that the substance in his wallet was methamphetamine.

■ Due to the absence of brake lights and a valid inspection sticker, Garrison was authorized to arrest appellant without a warrant. See Art. 6701d, Secs. 118, 140 and 153, V.A.C.S. Likewise, the officer had probable cause to arrest appellant due to his failure to produce a valid driver's license. See Art. 6687b, Sec. 13, V.A.C.S. A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person or of objects immediately associated with the person of the arrestee. *Stewart v. State*, Tex.Cr.App., 611 S.W.2d 434. See *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In *Stewart*, this Court upheld the warrantless search of the defendant's purse as a search incident to a lawful arrest. See also *Brown v. State*, Tex.Cr.App., 594 S.W.2d 86.

Appellant's reliance on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), is misplaced. As this Court noted in *Stewart v. State*, supra:

"A 'full search of the person,' however has recently been held, under the *Chadwick* progeny ... has been held to include wallets. See *United States v. Passaro*, 624 F.2d 938 (9th Cir. 1980); *United States v. Ziller*, 623 F.2d 562 (9th Cir. 1980); *United States v. Matthews*, 615 F.2d 1279 (10th Cir. 1980); *United States v. Phillips*, 607 F.2d 808 (8th Cir. 1979); *United States v. Castro*, 596 F.2d 674 (5th Cir. 1979). In *United States v. Passaro*, supra, the Court of Appeals, in concluding that *Chadwick* did not apply to the warrantless search of a wallet, said:

"'Just as the police in *Robinson* could, incident to a lawful arrest, search the defendant's person, including the contents of a cigarette package found in the defendant's pocket, so too could the search incident to Passaro's arrest include an inspection of the contents of his wallet to discover evidence of crime ... The search here was valid and reasonable and the evidence seized therefrom was admissible even though it was unrelated to the crime for which Passaro was arrested.' [Cases omitted].

"And in *United States v. Ziller*, supra, the Court of Appeals said:

"'In our view, a search of the person which produced the wallet being permissible under *Chadwick*, a search of the contents of the wallet is likewise permissible as being an incident to and a part of the personal search.' " Id. at 437.

■ We find that Garrison's warrantless search of appellant's wallet following the arrest was permissible as a search incident to arrest. No error is shown in the court overruling appellant's motion to suppress.

Appellant's motion for rehearing is denied.

McCORMICK, J., concurs in result.

CLINTON, Judge, dissenting.

In *Stewart v. State*, 611 S.W.2d 434, 441 (Tex.Cr.App.1981), concurring in the judgment of the Court, I pointed out that the Supreme Court of the United States had not yet construed the phrase "immediately associated with the person of the arrestee" to include a purse. Nor has it applied the phrase to a wallet. Indeed, the Supreme Court never *explained* what it understands the phrase to mean or suggested how it may be applied.[1] Thus, that the rule the

---

1. The phrase appears in a sentence at the end of a paragraph in the opinion of the Supreme

Court in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), while the

majority fashioned in *Stewart* is all that authoritative is still open to question.[2]

The majority opinion in the cause at bar cites *Stewart* and "sees" *Robinson v. U. S.,* supra, following the statement: "A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person <u>or of objects immediately associated with the person of the arrestee</u>."[3] While *Stewart* does, *Robinson* does not contain the underscored language—certainly not in the paragraph which ends with the holding, *viz*:

> " . . . It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."[4]

Though the officers in *Robinson* and *Gustafson* were said to be entitled to inspect the crumbled cigarette package and the B & H cigarette box, *carte blanche* has not been given to rummaging through a wallet or purse.[5] The majority opinion extracts from *Stewart v. State,* supra, its discussion of and quotes from several federal cases to support the search of Stewart's purse at the station house. As to the reproduced excerpts, *United States v. Passaro* and *United States v. Ziller,* I note that in each instance the search which produced a wallet occurred away from the scene of arrest, either at a place of detention or an office of the arresting officers preparatory to booking.[6]

The Constitution of the State of Texas mandates that citizens "shall be secure in their . . . possessions . . . from all unreasonable seizures or searches . . . ," Article I, § 9, Bill of Rights. It is difficult to conceive of a "possession" more imbued with a reasonable expectation of privacy than a wallet on the person of one away from his house. Without some indication that a seizure of that wallet came within the scope of the purposes which make initiating a search of the person permissible, I would hold un-

Court is in the course of rejecting an argument advanced by the Government, *viz*:

> "Once law enforcement have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."

*Id.,* 433 U.S. at 15, 97 S.Ct. at 2485.

**2.** In a strikingly similar situation, the attention of the Supreme Court was drawn to a passage in *Peters v. New York,* 392 U.S. 40, 67, 88 S.Ct. 1889, 1904–1905, 20 L.Ed.2d 917 (1968) that the Court of Appeals had relied on in coming to a conclusion that the Supreme Court would reject in *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Wrote Justice Rehnquist for the Court:

> "We do not believe that the Court in *Peters* intended in one unexplained and unelaborated sentence to impose a novel and far-reaching limitation of the authority to search the person of an arrestee incident to his lawful arrest."

*Id.,* 414 U.S. at 229, 94 S.Ct. at 474.

**3.** All emphasis is mine throughout unless otherwise indicated.

**4.** What the officer came across in his incident search was an object in a left breast pocket of a coat Robinson was wearing that turned out to be a crumpled up cigarette package containing still other objects that by feel the officer could tell were not cigarettes—they were 14 gelatin capsules of heroin. In the companion decision, *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the officer felt and then took from the left front coat pocket and later opened a Benson and Hedges cigarette box containing instead several handrolled marihuana cigarettes.

**5.** The *Robinson* opinion acknowledges that the "authority to search the person incident to arrest . . . [is] based upon the need to disarm and to discover evidence," but it holds a search incident to arrest does not have to be justified by a factual showing of such need. In Texas so far as I can ascertain, only *Stewart v. State,* supra, has accepted this relatively new notion, and it was not submitted to the Court En Banc for consideration, a motion for rehearing never being presented for that purpose.

**6.** The majority also mentions *Brown v. State,* 594 S.W.2d 86 (Tex.Cr.App.1980), but the decision went off on the proposition that though *Chadwick* "seems to support" the argument that the officers needed a warrant to search the purse one had taken from Brown, the *Chadwick* holding was of no avail since it is not applied retroactively in this jurisdiction.

der the Constitution of this State that a seizure and search of an otherwise innocuous wallet are constitutionally impermissible.[7]

ROBERTS, J., joins.

TEAGUE, Judge, dissenting.

Finding that the majority's opinion does not adequately set out the facts of the case, I will first state the facts in more detail. Also, the remarks I make are limited to an in the field search by a patrolman of the wallet of a person arrested for committing minor or petty traffic offenses. My remarks do not concern the booking aspect that a person arrested for committing minor traffic offenses goes through. See, however, *Murray v. State*, Tex.Cr.App., 615 S.W.2d 721, 723 (1981).

After observing that appellant was driving a motor vehicle without any brake lights, Houston Police Officer L. D. Garrison stopped appellant's automobile. Thereafter, he found that appellant had an expired Louisiana driver's license. Garrison also saw that the motor vehicle had an expired Louisiana inspection sticker. Contrary to what the majority implies, appellant was not placed under formal arrest at that time.[1] This was because, as Garrison tells us in his testimony, Houston Police Department's policy did not authorize him to formally arrest and book[2] a person for the above offenses, as he had to first communicate with a superior officer, who actually makes the decision whether the person is to be booked. Here, Garrison communi-

cated with his superior. After he received authority from his superior to book the appellant for committing the above minor traffic offenses, it was only then that Garrison sought to conduct any type search of appellant's person.

Garrison first conducted a "pat down" search of the appellant. When Garrison conducted the "pat down" search he felt a bulge in appellant's right rear pocket, which caused him to remove appellant's billfold. There is nothing to evidence anything unusual about the appearance of appellant's wallet, i.e., it's appearance revealed nothing more than an ordinary man's wallet.

Although Garrison was not asked to amplify on the reasons he gave for searching appellant's wallet, many of them appear incredible. Garrison tells us that he closely examined the wallet because he wanted to:

"find out whether he [appellant] had a large amount of money or any other type of contraband in his billfold."

If Garrison had seen a large amount of money in the wallet, he tells us that:

"if it is not a pay day, [then] he [appellant] could have acquired that large amount of money by some other means."

Weapons also concerned Garrison, for he tells us he was looking for:

"any type of weapons; razor blades, needles, *or even a key for handcuffs.*" (Emphasis added.)

In his examination of the contents of the wallet, Garrison was also looking for evi-

---

**7.** The presentation of testimony of the arresting officer by Judge Teague in his dissenting opinion *demonstrates beyond peradventure* that intrusion into appellant's wallet was not rationally justified. Dissembling by the officer is so transparent that he reveals an inability to articulate *facts* that made his seizure and search of the wallet reasonable in the constitutional sense. Only by fashioning and woodenly applying a "bright line" rule which abolishes need for a factual showing of "reasonableness" may what occurred here be upheld. I would adhere to the settled principle restated in *Beck v. State*, 547 S.W.2d 266, 267 (Tex.Cr.App.1976), and continue to protect against invasion of privacy until the invader factually justifies his intrusion.

**1.** There is nothing in the record to reflect that simply because a person from out of the State of Texas is arrested in Texas for violating our traffic laws, he will be summarily jailed. There is also nothing in the record to show that appellant had not permanently moved to Houston and simply had failed to obtain a valid Texas driver's license and had his automobile inspected by an authorized Texas inspection station. The record reflects that at all times appellant cooperated with Garrison.

**2.** Garrison's testimony reflects that when he used the term "booking," to him "booking" encompassed "jailing" an individual. However, legally this is not necessarily so.

dence that might disprove who appellant said he was, and as reflected on the driver's license.

For fear that he would be wrongfully accused of keeping money he found in the wallet, Garrison tells us that he was "inventorying it [the wallet] for [his] own protection." "It is for my own protection. Some suspects, once you stop them, if you don't count their money once they get down town they claim that they had a larger amount of money; and it is just for my own protection that I want to know, for myself."

Asked why he did not just simply take possession of the wallet and retain it until he arrived at the station house, Garrison tells us: "I could have forgotten that it was in my pocket also, or once I got down town I could have forgotten that it was in my pocket."

In conducting his meticulous and thorough examination of the contents of the appellant's wallet, Garrison found "stuck between the folded money" the contraband that was the basis for appellant's conviction.

Once the decision was made to formally arrest appellant, Garrison should have, in my view, followed, not the policy of the Houston Police Department, but the wording of Art. 15.17(a), V.A.C.C.P., which provides:

> In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested. The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the per-

son arrested that he is not required to make a statement and that any statement made by him may be used against him. *The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law.* (Emphasis added.)

In one, two and three fashion, the majority's opinion holds that (1) under the above facts Garrison "was authorized to arrest appellant without a warrant," to which holding I do not disagree, (2) "likewise, the officer had probable cause to arrest appellant due to his failure to produce a valid driver's license," to which holding I also do not disagree, and (3) "A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person or of objects immediately associated with the person of the arrestee." "We find that Garrison's warrantless search of appellant's wallet following the arrest was permissible as a search incident to arrest." To number 3's holdings, I strongly disagree in light of the above stated facts, and cannot subscribe to a principle of law that when any motorist is arrested for committing a breach of our traffic laws, that person becomes subject to a full body search, as well as a complete and thorough search of items of personal property found on his person.

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court of the United States held that the Fourth Amendment to the United States Constitution permitted an extensive warrantless search of the person of an arrestee. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court held that under the Fourth Amendment police may not search the luggage and other personal property of the arrestee without a warrant, after it has been reduced to the exclusive control of the police officers; but exempted from this holding the search of personal property "immediately associated with the person of the arrestee."

The facts in this cause, see *supra*, simply do not nicely fit under the *Robinson, Gustafson,* and *Chadwick*, supra, line of cases. At first blush, the named cases appear to uphold Garrison's rifling the contents of appellant's wallet, and did not infringe upon the protections afforded by the Fourth Amendment, as construed by a majority of the Supreme Court. Nevertheless, I do not find the above cases are applicable to the factual situation that this Court is called upon to address.

Here, there is no question that Garrison lawfully arrested the appellant, and lawfully detained appellant until he could obtain approval from his superior to take appellant to the station house, when, if approval was forthcoming, he would presumably, by Garrison's testimony, be booked. Once the superior's approval was obtained, and the decision was made to take the appellant to the station house, I find the principles of law announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Morales v. New York*, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) then became applicable to this cause, with Garrison having the lawful right to frisk the person of the appellant, i.e., such frisk being limited to a pat down search of the outer garments appellant was then wearing. Once Garrison felt the bulge in appellant's back pocket, he was lawfully entitled to seize the item, (the wallet), and take possession of it until the booking process commenced, when he would then presumably turn the item seized over to the property officer. Cf. Art. 15.17, *supra*. Without more shown, he was not lawfully entitled to examine the contents of the wallet. As the facts do not concern the property officer, and what he may or may not legally be allowed to do with items of personal property turned over to him by a field officer, I do not discuss that issue.

I therefore believe that once Garrison seized the appellant's wallet, as nothing more is shown by the record, he became nothing more than the lawful caretaker or custodian of the wallet, and as nothing is shown to justify entry into or examination of the contents of the wallet, he had no legal authority under the Fourth Amendment to make entry into or examination of the contents of the wallet without a lawful warrant. Furthermore, as the wallet was immediately associated with the person of the appellant, the search of the wallet was not covered by the rules announced in *Chadwick*, supra, or of *Robinson* and *Gustafson*, supra.

However, as Clinton, J. said in his dissenting opinion, "the Supreme Court of the United States has not yet construed the phrase 'immediately associated with the person of the arrestee' to include a purse. Nor has it applied the phrase to a wallet."

Furthermore, I believe that Art. 1, Sec. 9, of the Texas Constitution affords individuals arrested in Texas for committing minor or petty traffic offenses far more protection than guaranteed by the Fourth Amendment to the United States Constitution.

Art. 1, Sec. 9, provides:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath of affirmation.

If the Supreme Court has seen fit to limit the degree of protection afforded by the Fourth Amendment, this does not prevent this Court from construing Art. 1, Sec. 9, of the Texas Constitution to provide persons of this State, who are arrested for minor or petty traffic offenses, a greater degree of protection from unreasonable searches and seizures by law enforcement officers, where "logic and a sound regard for the purposes of those protections have so warranted." *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974). Such a construction would be in keeping with the traditions of individuality,

privacy and personal liberty which have marked the history of our State.

In *Kaluna*, id., the Supreme Court of Hawaii considered the holdings in *Robinson* and *Gustafson* and flatly rejected the invitation to increase the permissible extent of warrantless searches of that State's citizens. The Court stated that "the right to be free of 'unreasonable' searches and seizures under article I, section 5 of the Hawaii Constitution is enforceable by a rule of reason which requires that governmental intrusion into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances." Such statement is in keeping with the law of this State, as enunciated in *Maldonado v. State*, Tex.Cr.App., 528 S.W.2d 234 (1975), that "the scope of a search is limited to the purpose which made its initiation permissible." See also *Beck v. State*, Tex.Cr.App., 547 S.W.2d 266 (1977).

In *Kaluna*, the purposes of a search incident to arrest were also noted. The "circumstances surrounding the arrest generate the authority to search without a warrant. If these circumstances show a legitimate basis for a search—such as protection of the arresting officer or preservation of the evidence of the crime for which the arrest is made—then a search is lawful only if no broader than necessary in light of the justification." Believing that the State has an interest in preventing introduction of contraband and weapons into places of detention, and finding that such purposes are served by the safekeeping of personal effects, without searches of the contents of those effects, it was held that the intrusion into the privacy of the individual is limited to the degree necessary to further valid governmental interests.

The Colorado Supreme Court followed the example set by the *Kaluna* opinion in *People v. Clyne*, 189 Colo. 412, 541 P.2d 71 (1975), and held that the Colorado constitution and statutes provide more protection to the individual than that allowed by *Robinson* and *Gustafson*, supra. In *Clyne*, the Colorado Court held that law enforcement officers may not indulge in a full search of a person if custodial arrest is optional if the individual is arrested for a petty offense, and there is neither a showing that the individual refused to sign a citation directing court appearance, or would disregard the notice to appear in court.[3]

California also repudiated the effects of *Robinson* and *Gustafson* in a line of cases, including *People v. Brisendine*, 13 Cal.2d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975) and *People v. Longwill*, 14 Cal.3d 943, 123 Cal.Rptr. 297, 538 P.2d 753 (1975). Those cases hold that under the California constitution "the permissible scope of a search of the person incident to a valid arrest is dependent not on the single fact of the existence of a 'custodial arrest,' but rather on the relative danger to the officer associated with each particular arrest." In California, therefore, "full body searches [are] impermissible when the arrest will be disposed of by a mere citation, or when the arrestee is to be transported to the station house in the police vehicle and there given the opportunity to post bond."

This distinction between arrestees who will be booked into jail and those allowed to post bail and go on their way is also observed in the states of Michigan and Alaska. Both of those states have refused to adopt *Robinson* and *Gustafson*, and instead prohibit extensive searches of the person of arrestees, beyond a weapons frisk, if the arrestee is not to be incarcerated. In *People v. Garcia*, 81 Mich.App. 260, 265 N.W.2d 115 (1978), that Court's holding was premised on the state's interim bail statute, requiring that arrestees accused of certain petty offenses be provided an opportunity to post bail before being booked into jail. No clear statutory right to release on bail in petty offense cases exists in Alaska, but

---

**3.** Although Garrison testified to the booking process, after a person is taken to the station house, there is no evidence to show that in all cases do the police jail a person for violating our traffic laws. Thus, Garrison did not negate the possibility that he would not have complied with Art. 15.17, *supra*, or that a magistrate would not have released the appellant on some sort of bail, without the necessity of him being jailed.

such release, if practicable, was required in *Zehrung v. State*, 569 P.2d 189 (Alaska 1977), which also held that "absent specific articulable facts justifying the intrusion ... a warrantless search incident to arrest, other than for weapons, is unreasonable and therefore violative of the Alaska constitution if the charge on which the arrest is made is not one, evidence of which could be concealed on the person."

The decisions of the Supreme Court establish minimum constitutional standards. The States, however, are free to establish stricter standards than those required by the Supreme Court. The above out of state cases merely reflect the trend that is occurring throughout the United States. This Court should join that trend. See also, F. Gilligan, "The Aftermath of Robinson-Gustafson," Vol. 2, No. 3, *Search and Seizure Law Report* (March, 1975); S. Davis, "State Court Expansion of Fourth Amendment Rights," Vol. 3, No. 10, *Search and Seizure Law Report* (October, 1976).

Regardless of what interpretations one might put on the decisions of the Supreme Court, the trail has thus been marked towards a constitutional rule in this State which would adequately balance the need for extensive intrusion into the privacy of an individual's possessions, with the legitimate need, in some cases, for such an intrusion. Today, a majority of this Court sanctions a full custodial search of a person arrested for the most petty of traffic offenses, and authorizes an extensive search of the person of the arrestee, including the reading of the private papers in the arrestee's wallet, prior to the booking and incarceration of the hapless motorist. This situation cries out for a remedy; and the remedy should begin with the holding that where a person is formally arrested for committing minor or petty traffic offenses, and nothing more is shown, police officers in the field are limited to a "pat down" search of the arrestee's outer clothing in order to determine if that person has on his person concealed weapons. If items of personal property are seized from the garments of the arrestee, neither entry into nor examination of the contents of the item of personal property seized may occur without a lawful search warrant.

To the failure of the majority to subscribe to this remedy, I respectfully dissent.

