Opinion issued April 14, 2016



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00317-CR

———————————

**ANDREAS MARCOPOULOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 248th District Court
Harris County, Texas
Trial Court Case No. 1440970

## DISSENTING OPINION

I respectfully dissent. I agree with appellant, Andreas Marcopoulos, that the

warrantless search of his vehicle, which revealed the evidence upon which he was

indicted and convicted of possession of less than one gram of cocaine,[1] clearly violated the Fourth Amendment. I would hold that the trial court abused its discretion in not suppressing the evidence against him.

## Background

Appellant was arrested, removed from his vehicle, and handcuffed, and his person and every compartment of his vehicle was searched because he failed to signal a lane change and a left turn.

Houston Police Department ("HPD") Officer J. Oliver, who was performing surveillance on a bar in Houston, Texas known for narcotics sales, saw appellant pull up to the bar in a truck, enter, and leave within three to five minutes. Officer Oliver had seen appellant at this bar on a previous occasion. After appellant left the bar, Officer Oliver followed him, saw appellant change lanes without signaling, and asked for a uniformed officer to perform a traffic stop. The uniformed officer, Officer T. Villa, pulled up and stopped behind appellant in a left-turn lane at a red light while Officer Oliver waited at the light to the right of appellant's truck. Both officers testified at the suppression hearing that they observed appellant make "furtive gestures" around the center console and passenger seat of the truck. When

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon 2010) (listing cocaine as controlled substance within penalty group one); *id.* § 481.115(b) (Vernon 2010) (providing that possession of less than one gram of substance in penalty group one is state-jail felony).

appellant did not signal his left turn until the light changed and he had begun to turn, Officer Villa activated his emergency lights. Appellant immediately pulled into a gas station and parked. Officer Villa removed Appellant from the truck, placed him under arrest, handcuffed him, searched him, and placed him in the police vehicle. While Officer Villa was placing appellant under arrest, his partner, Officer Rogers, began what Villa testified was an "inventory search" of the truck incident to appellant's arrest. Officers Villa and Rogers found a small baggie of cocaine between the center console and the passenger seat, a second in the console, and another in appellant's wallet.

Appellant argues the trial court abused its discretion by denying his motion to suppress evidence obtained by the warrantless search. I agree.

### Discussion

**A.    Standing**

The State argues that appellant lacks standing to contest the warrantless search of his vehicle because he had no privacy interest in the contents of the vehicle. I agree with the majority that appellant had a reasonable expectation of privacy in his vehicle and had standing to contest the search of his vehicle for the reasons and under the authorities stated in the majority opinion. *See Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014); *Oliver v. State*, 716 S.W.2d 742, 743 (Tex. App.—

3

Fort Worth 1986, pet. ref'd). Therefore, I join Justice Higley's opinion with respect to this issue.

**B.     Violation of Fourth Amendment Protection Against Warrantless Searches**

On appeal, appellant contends that the warrantless search of his person and vehicle violated his Fourth Amendment right to protection against unreasonable searches and seizures. Specifically, appellant contends that the officers did not conduct a constitutionally permissible inventory search of his vehicle and that the warrantless search of his person and vehicle incident to his arrest was unreasonable. The majority concludes that there was probable cause to arrest appellant for possession of contraband and to search his vehicle pursuant to the "automobile exception" to the warrant requirement.

Under the Fourth Amendment, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). It is the State's burden to show that the warrantless search falls within a recognized exception to the warrant requirement. *McGee*, 105 S.W.3d at 615. One such exception is a search incident to a lawful arrest. *Gant*, 556 U.S. at 338, 129 S. Ct. at 1716; *McGee*, 105 S.W.3d at 615. Another exception is an inventory search. *See*

4

*Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987); *Moberg v. State*, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991). And a third exception is the automobile exception, under which "law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009).

### 1. Search Incident to Arrest Exception

The exception for a warrantless search incident to arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338, 129 S. Ct. at 1716; *see State v. Elias*, 339 S.W.3d 667, 677 (Tex. Crim. App. 2011). This exception to the warrant requirement is a limited exception that permits officers to remove any weapons the arrestee might seek to use and to prevent the concealment or destruction of evidence. *New York v. Belton*, 453 U.S. 454, 457, 101 S. Ct. 2860, 2862 (1981), *abrogated by Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419 (2011); *Chimel v. California*, 395 U.S. 752, 756, 89 S. Ct. 2034, 2036 (1969); *McGee*, 105 S.W.3d at 615. Thus, "[a] search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence." *McGee*, 105 S.W.3d at 615. The exception "places a temporal and a spatial limitation on searches incident to arrest, excusing compliance with the

5

warrant requirement only when the search 'is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.'" *Belton*, 453 U.S. at 465, 101 S. Ct. at 2866–67 (Brennan, J., dissenting) (quoting *Shipley v. California*, 395 U.S. 818, 819, 89 S. Ct. 2053, 2054 (1969) (per curiam)). The phrase "the area 'within his immediate control'" means "the area from within which he might gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. at 339, 129 S. Ct. at 1716. That limitation defines a boundary of the exception which "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.*

"If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the [exception] does not apply." *Id.*; *Knowles v. Iowa*, 525 U.S. 113, 116–17, 119 S. Ct. 484, 487 (1998) (holding that when both justifications for exception are absent, namely "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," search is unjustified). Accordingly, the basic scope of searches incident to lawful custodial arrests "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is 'reasonable

6

to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137 (2004) (Scalia, J., concurring)).

"In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.*; *Knowles*, 525 U.S. at 118. Thus, in *Gant*, the Supreme Court held that "[n]either the possibility of access nor the likelihood of discovering offense-related evidence authorized the search" of the defendant's vehicle where the defendant was arrested for driving with a suspended license and immediately handcuffed and locked in a patrol car while the officers searched his car and found cocaine in a jacket pocket. 556 U.S. at 336, 344, 129 S. Ct. at 1715, 1719. The Supreme Court stated that, where the five officers involved in the arrest outnumbered the three arrestees and all had been handcuffed and secured in separate patrol cars before the search of Gant's car began, Gant was clearly "not within reaching distance of his car at the time of the search." *Id.* at 344, 129 S. Ct. at 1719. Likewise, where the defendants in cases such as *Belton* and *Thornton* were arrested for drug offenses, "Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id.*

Similarly, in *Knowles*, a policeman stopped the defendant for speeding, issued him a citation rather than arresting him, and then conducted a full search of his car,

7

finding marijuana and a "pot pipe," for which the officer then arrested him. *Knowles*, 525 U.S. at 114, 119 S. Ct. at 486. The Supreme Court held that a routine traffic stop, such as that in which Knowles was detained for speeding, is "a relatively brief encounter" that "is more analogous to a so-called '*Terry* stop' . . . than to a formal arrest." *Id.* at 117, 119 S. Ct. at 488 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984)). While acknowledging that "concern for officer safety in this context may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search." *Id.* Nor was the second justification for authority to search incident to arrest present—"the need to discover and preserve evidence." *Id.* at 118, 119 S. Ct. at 488. "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained," and "[n]o further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." *Id.*

Under *Knowles* and *Gant*, officers

> may order out of a vehicle both the driver and any passengers; perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous; conduct a "*Terry* patdown" of the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon; and even conduct a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest.

8

*Knowles*, 525 U.S. at 118, 119 S. Ct. at 488 (citations omitted).

What police officers may *not* do, even when they conduct a search incident to a lawful custodial arrest of a recent occupant of a vehicle, is to search the vehicle when the arrestee is secured and not within reaching distance of the passenger compartment. *See Gant*, 556 U.S. at 343–44, 129 S. Ct. at 1719. Nor may they pat down the driver and passengers *without* reasonable suspicion that they may be armed and dangerous. *See Knowles*, 525 U.S. at 118, 119 S. Ct. at 488; *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

The search and seizure of evidence in this case falls squarely within the scope of an unjustified search and seizure under *Gant* and *Knowles*, as well as *McGee* and *Elias*. Indeed, the situation here was exactly the same here as in *Gant* and *Knowles*.

Here, Officer Villa handcuffed appellant and "pretty much immediately arrested him" for failing to signal a lane change and failing to signal a turn. Officer Villa then searched appellant, placed him in the back of the marked unit, and returned to appellant's truck to assist Officer Rogers, who had already started "inventorying" the contents of the car—searching both appellant's person and his vehicle in the process. Because appellant was arrested for the offenses of failing to signal a lane change and a turn, the officers who arrested him could not have expected to find further evidence of the crime for which he was arrested in the passenger compartment of his vehicle. *See Gant,* 556 U.S. at 343–44, 129 S. Ct. at

9

1719. And because appellant was safely secured in police custody and had no further access to his vehicle by the time the officers started searching it, the officers could not have feared either that he would destroy evidence or that he might gain immediate control of a weapon. *See Knowles*, 525 U.S. at 117–18, 119 S. Ct. at 487–88.

The search of appellant's person and his vehicle incident to his arrest for failing to signal a lane change and a turn clearly exceeded the proper scope of a warrantless search incident to that arrest. Therefore, the search violated the Fourth Amendment prohibition against unreasonable searches and seizures. The Supreme Court made this clear in *Gant* by stating:

> A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals.

*Gant,* 556 U.S. at 345, 129 S. Ct. at 1720. That threat was realized in this case.

I would hold that the warrantless search of appellant's person and vehicle was not justified by the exception for a search incident to arrest and plainly violated the Fourth Amendment. The State argues, however, that the warrantless search was justified by the inventory policy of the Houston Police Department. Again, I disagree.

## 2.    *Inventory Search Exception*

Inventory searches of automobiles are consistent with the Fourth Amendment and are a "well-defined exception to the warrant requirement" in that "[t]he policies behind the warrant requirement are not implicated in an inventory search . . . nor is the related concept of probable cause." *Bertine*, 479 U.S. at 371, 107 S. Ct. at 741 (citation omitted). "The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures, [and] [t]he probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." *Id.* (quoting *South Dakota v. Opperman*, 428 U.S. 364, 370 n.5, 96 S. Ct. 3092, 3097 n.5 (1976)).

Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stole, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990) (quoting *Bertine*, 479 U.S. at 372, 107 S. Ct. at 741). "The policy or practice governing inventory searches should be designed to produce an inventory," and standardized criteria or established routine must regulate the opening of containers found during the search. *Id.* "Nothing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to

11

standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375, 107 S. Ct. at 743.

By virtue of the transitory nature of automobiles, several factors make inventory searches "reasonable" under the Fourth Amendment after a vehicle's legal impoundment. *Moberg*, 810 S.W.2d at 193. These include: "(1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from inherent danger." *Id.* The inventory search must be "carried out in accordance with standard procedure in the police department" and must be "limited in scope to the extent necessary to carry out the caretaking function," and no evidence may be presented that the "search was a pretext concealing an investigatory police motive." *Id.* at 193–94 (citing *Opperman*, 428 U.S. at 374–75, 96 S. Ct. at 3100; *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523 (1973)). "[A]n inventory search must not deviate from police department policy," a burden which the State may satisfy by showing that an inventory policy existed and was followed. *Id.* at 195. "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"; nor may it be "turned into 'a purposeful and general means of discovering evidence of crime.'" *Wells*, 495 U.S. at 4, 110 S. Ct. at 1635 (quoting *Bertine*, 479 U.S. at 376, 107 S. Ct. at 743 (Blackmun, J., concurring)); *Moberg*, 810 S.W.2d at 196 ("The doctrine of 'inventory search' may

not be invoked as a mere afterthought and used as a ruse or pretext for general rummaging in order to discover incriminating evidence.").

Here, the search of appellant's truck initiated by Officer Rogers, even as Officer Villa was in the process of arresting appellant for a traffic violation, was clearly not an inventory search undertaken to produce an inventory of appellant's property, as required by *Wells*, *Bertine*, and *Moberg*. Aside from Officer Villa's testimony that the officers conducted an inventory search of appellant's vehicle because HPD policy dictated that, under these circumstances, appellant's vehicle needed to be towed upon his arrest, there was no testimony relating to HPD's policy for how officers ought to conduct inventory searches and no testimony that the policy was followed with respect to this particular search. There was also no testimony or documentation at the suppression hearing as to any items recovered from appellant's vehicle other than the contraband that was the obvious object of the search, as required by *Wells*, *Bertine*, and *Moberg*. *See, e.g.*, *Wells*, 495 U.S. at 4, 110 S. Ct. at 1635 ("The policy or practice governing inventory searches should be designed to produce an inventory."). The search was therefore plainly unreasonable and unconstitutional under the Fourth Amendment as a purported inventory search. *See Wells*, 495 U.S. at 4, 110 S. Ct. at 1635; *Bertine*, 479 U.S. at 371, 375, 107 S. Ct. at 741, 743; *Moberg*, 810 S.W.2d at 195.

### 3. *Automobile Exception*

Because the search of appellant's vehicle cannot be constitutionally justified either as a search incident to arrest or as an inventory search, the search can be constitutionally justified only if it falls within the automobile exception to the Fourth Amendment's warrant requirement, which the exception the majority uses to find the search permissible.

"If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996); *see State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband . . . .") (quoting *United States v. Johns*, 469 U.S. 478, 484, 105 S. Ct. 881, 885 (1985)).  But the automobile exception "does not declare a field day for the police in searching automobiles.  Automobile or no automobile, there must be probable cause for the search." *Almeida-Sanchez v. United States*, 413 U.S. 266, 269, 93 S. Ct. 2535, 2537–38 (1973).

I do not agree with the majority that Officers Villa and Rogers had probable cause to believe that appellant's vehicle contained contraband when they stopped and arrested him for a clearly pretextual traffic violation while simultaneously

14

ordering him out of his vehicle, handcuffing him, securing him in a police vehicle, and searching his person and his truck.

The majority relies on only two cases to support its conclusion that probable cause to arrest appellant for possession of contraband, and thus to search his vehicle, existed under the circumstances of this case. Both are inapposite and one is an unpublished criminal case without precedential value. *See* TEX. R. APP. P. 47.7 ("Opinions and memorandum opinions [in criminal cases] not designated for publication by the court of appeals under these or prior rules have no precedential value . . . .").

In *Kelley v. State*, the Fourteenth Court of Appeals held that the evidence supported the trial court's finding that the arresting officer had reasonable suspicion to search for weapons in the defendant's truck. 807 S.W.2d 810, 814 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). In that case, a known informant notified the officer that Kelley was sitting in a certain model car at a certain place, dealing crack cocaine and allegedly possessing an Uzi. *Id.* The officer discovered Kelley in a place with a "well-known reputation" for drug dealing and recognized Kelley as someone who had dealt drugs in the past. *Id.* Kelley made "numerous furtive gestures" when the officer approached the truck, and when the officer ordered Kelley out of the truck, Kelley continued making furtive gestures, put his hands behind his back, and "squirmed in his seat." *Id.* A hat was located on the truck's seat, and the

15

officer was concerned that the hat concealed a weapon. *Id.* When the officer moved the hat, he discovered a bag of crack cocaine. *Id.* The court held that the officer's personal knowledge of Kelley, the reputation of the location where the truck was parked, and the "obvious attempt to hide something" from the officer justified the "minimal intrusion that resulted when [the officer] reached into the truck and moved the hat." *Id.*

In *Coleman v. State*, an unpublished decision from a panel of this Court, the panel held that the arresting officers had probable cause to believe the vehicle contained contraband. *See* No. 01-09-01071-CR, 2011 WL 5026182, at *4–5 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication). In *Coleman*, an officer received a tip from an informant that Coleman was conducting narcotics-related activity at his residence. *Id.* at *1. While conducting surveillance, officers saw another man stop at the house, stay for approximately twenty minutes, and leave carrying a "brick-like object." *Id.* Officers followed this man, stopped him for a traffic violation, and received a positive "alert" on the vehicle by a narcotics dog. *Id.* Officers discovered a kilogram of cocaine in the vehicle. *Id.* Another officer watching Coleman's residence at this time saw Coleman leave the house in his vehicle. *Id.* The officer observed traffic violations and directed Coleman to stop, but Coleman continued to drive for approximately a mile without pulling over. *Id.* An officer drove alongside Coleman and saw him

16

making furtive gestures near the center console of his vehicle. *Id.* When Coleman finally stopped, officers observed more furtive gestures. *Id.* Officers forcibly removed Coleman from the vehicle, handcuffed him, and walked him to a patrol car. *Id.* at \*2. Other officers approached the vehicle at this time, observed a bag containing white powder in the open center console and a Sprite bottle containing red liquid in the driver's side cup holder, which officers believed to be codeine, and they arrested Coleman. *Id.* Based on all of these circumstances, this Court concluded that the officers had probable cause to believe Coleman's vehicle contained contraband, justifying a search under the automobile exception to the warrant requirement. *Id.* at \*4–5.

Neither of these cases supports a finding of probable cause to arrest appellant for possession of cocaine and to search his vehicle pursuant to that arrest in this case. Indeed, in *Coleman*, this Court specifically stated, "'Furtive gestures' alone . . . are not sufficient for probable cause to conduct a warrantless search"; "while probable cause may arise from information supplied by a confidential informant, corroboration is required"; and, "[t]ips and information with no indicia of reliability require something more, such as observed activity, to elevate the level of suspicion" to probable cause. 2011 WL 5026182 at \*4.

Neither *Kelley* nor *Coleman* supports the majority's conclusion in this case that probable cause existed to arrest appellant, remove him from his vehicle,

handcuff him, search his person, place him in a patrol car, and search his vehicle for narcotics on the basis that he entered a bar in which narcotics activity was suspected and left three to five minutes later, committed the traffic violations of failing to signal a lane change and failing to timely signal a left turn, and made "furtive gestures" near the center console of his vehicle. Here, Officer Oliver's suspicion that appellant possessed cocaine because he entered a bar where narcotics were known to be sold and exited a few minutes later was entirely uncorroborated by anything other than "'furtive gestures' alone" as appellant was stopped at a stoplight and boxed in by two police cars. *See Coleman*, 2011 WL 5026182, at \*4. Aside from Officer Oliver's testimony that he had seen appellant at this bar on a previous occasion, there was no evidence that Oliver knew appellant or knew him for previous drug transactions. There was no tip from a reliable informant. There was no testimony that any officer observed appellant engage in a narcotics transaction. The evidence was therefore legally insufficient to supply probable cause to arrest appellant for possession of narcotics until he was actually arrested for traffic violations and searched, along with his vehicle.

As Officers Villa and Rogers lacked probable cause to believe the criminal activity of possession of contraband was occurring in appellant's vehicle when he was stopped for a traffic violation and his vehicle searched, the search of appellant's vehicle was unjustified under the automobile exception to the Fourth Amendment's

protection against warrantless searches and seizures. *See Labron*, 518 U.S. at 940, 116 S. Ct. at 2487 ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." ).

As the search that occurred in this case plainly violated all three grounds advanced to support the constitutionality of the search—search incident to arrest, inventory search, and search pursuant to the automobile exception—I would hold that the search was clearly unconstitutional, that the evidence seized from appellant's person and vehicle was inadmissible, and that appellant's motion to suppress should have been granted.

## Conclusion

I would hold the trial court clearly abused its discretion by denying appellant's motion to suppress the evidence upon which he was indicted and convicted for possession of cocaine. I would reverse the judgment of the trial court, suppress the evidence found as result of the illegal search of appellant's person and vehicle, and remand for further proceedings consistent with this opinion.


                    Evelyn V. Keyes
                    Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Chief Justice Radack, concurring.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).