Laura Carter Higley, Justice
Appellant, Andreas Marcopoulos, was charged by indictment with possession of less than one gram of cocaine.[1] Following a motion to suppress, Appellant pleaded guilty, and the trial court placed Appellant on deferred adjudication with community supervision for three years. On appeal, Appellant argued the trial court abused its discretion by denying his motion to suppress the admission of drugs found in a warrantless search of his truck. The State argued Appellant lacked standing to challenge the search. In an earlier opinion, we held that Appellant had standing to challenge the warrantless search of his vehicle.[2] We upheld the trial court's denial of the motion to suppress, applying the automobile exception to the requirement of obtaining a search warrant in one opinion.[3] The Court of Criminal Appeals reversed our judgment, holding that the search was not permissible under the automobile exception to a search warrant.[4] The court remanded the case back to this Court to review Appellant's remaining grounds for challenging the validity of the search of his truck.
We reverse and remand.
Background
On September 10, 2014, Officer J. Oliver was performing surveillance on a bar in Houston, Texas known for narcotics sales. Officer Oliver observed Appellant drive up to the bar in a truck, enter the bar, and leave within three to five minutes. After Appellant left the bar, Officer Oliver followed him. He saw Appellant change lanes without signaling and asked for a uniformed officer to perform a traffic stop.
*702 Officer T. Villa was working that evening with Officer Rogers. They received Officer Oliver's request to stop Appellant. Officer Villa drove up behind Appellant while he was stopped in a left turn lane. Appellant did not signal his turn until after he began to turn. Officer Villa activated his emergency lights. Appellant immediately pulled into a gas station and parked.
Officer Villa removed Appellant from the truck and "pretty much immediately" placed him under arrest. As Officer Villa took Appellant to the patrol car, Officer Rogers began to search Appellant's car. Officer Villa described this as an inventory of the car because the car was going to be impounded. He testified that the inventory was necessary because departmental procedure requires that all vehicles be impounded when the driver is arrested.
Officer Villa searched Appellant, placed Appellant's belongings on the hood of the patrol car, and placed Appellant in the patrol car. He testified that he then helped Officer Rogers search Appellant's truck. Officer Rogers found two baggies containing cocaine in the truck. Officer Villa then returned to the patrol car, looked through Appellant's wallet, and found another baggie of cocaine.
Before trial, Appellant filed a motion to suppress. Officers Oliver and Villa testified at the hearing on the motion. Officer Rogers was not present. At the conclusion of the hearing, the trial court denied the motion to suppress. The same day, Appellant pleaded guilty to the offense, subject to his right to appeal the denial of the motion.
Motion to Suppress
In four issues, Appellant argues the trial court abused its discretion by denying his motion to suppress evidence obtained from searching the truck.
A. Standard of Review
We review a trial court's denial of a motion to suppress under a bifurcated standard of review. Turrubiate v. State , 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. Id. Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. Gonzales v. State , 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. Maxwell v. State , 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) ; State v. Ross , 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).
When, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. Walter v. State , 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. See Cantu v. State , 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).
B. Error
Appellant's four issues challenge (1) whether the search of his truck fit within the inventory-search exception to obtaining a search warrant, (2) whether the search could properly be characterized as an inventory-search, (3) whether the Houston Police Department's inventory search requirements were constitutional, and (4) whether the search exceeded the scope of his arrest.
*703 "Pursuant to the Fourth Amendment, a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well established exceptions." McGee v. State , 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (internal quotations omitted). When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant. See ids="9122485,9122575" index="8" url="https://cite.case.law/sw3d/105/609/">id.
Many permissible searches without a warrant are based on probable cause, like with the automobile exception to obtaining a search warrant. See Marcopoulos v. State , 538 S.W.3d 596, 600 (Tex. Crim. App. 2017). The Court of Criminal Appeals held there was not sufficient probable cause to support a search of Appellant's truck. See ids="12655525" index="10" url="https://cite.case.law/sw3d/538/596/#p600">id. at 604. At trial below, the State argued there were two applicable exceptions to the requirement to obtain a search warrant that did not require probable cause: the search-incident-to-arrest exception and the inventory-search-pursuant-to-impounding-the-vehicle exception. See Colorado v. Bertine , 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987) (holding inventory search does not invoke probable cause protections); State v. Ford , 537 S.W.3d 19, 24 (Tex. Crim. App. 2017) (requiring, for search incident to arrest, probable cause for arrest but not for search).
1. Search Incident to Arrest Exception
In his fourth issue, Appellant argues that the officers' search of his vehicle was not permissible under the search-incident-to-arrest exception to the requirement to obtain a warrant. The exception for a warrantless search incident to arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." Arizona v. Gant , 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). This exception to the warrant requirement is a limited exception that permits officers to remove any weapons the arrestee might seek to use and to prevent the concealment or destruction of evidence. New York v. Belton , 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981), abrogation recognized in Davis v. United States , 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) ; McGee , 105 S.W.3d at 615. Thus, "[a] search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence." McGee , 105 S.W.3d at 615.
The exception "places a temporal and a spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search 'is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.' " Belton , 453 U.S. at 465, 101 S.Ct. at 2866-67 (Brennan, J., dissenting) (quoting Shipley v. California , 395 U.S. 818, 819, 89 S.Ct. 2053, 2054, 23 L.Ed.2d 732 (1969) (per curiam)). The phrase "the area 'within his immediate control' " means "the area from within which he might gain possession of a weapon or destructible evidence." Gant , 556 U.S. at 339, 129 S.Ct. at 1716. That limitation defines a boundary of the exception which "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." Id.
"If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the [exception] does not apply." Id. ; see also *704 Knowles v. Iowa , 525 U.S. 113, 116-17, 119 S.Ct. 484, 487, 142 L.Ed.2d 492 (1998) (holding that, when both justifications for exception are absent, namely "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," search is unjustified). Accordingly, the basic scope of searches incident to lawful custodial arrests "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " Gant , 556 U.S. at 343, 129 S.Ct. at 1719 (quoting Thornton v. United States , 541 U.S. 615, 632, 124 S.Ct. 2127, 2137, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring)).
"In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." Id. ; Knowles , 525 U.S. at 118, 119 S.Ct. at 488. Thus, in Gant , the Supreme Court held that "[n]either the possibility of access nor the likelihood of discovering offense-related evidence authorized the search" of the defendant's vehicle where the defendant was arrested for driving with a suspended license and immediately handcuffed and locked in a patrol car while the officers searched his car and found cocaine in a jacket pocket. 556 U.S. at 336, 344, 129 S.Ct. at 1715, 1719. The Supreme Court held that, where the five officers involved in the arrest outnumbered the three arrestees and all had been handcuffed and secured in separate patrol cars before the search of Gant's car began, Gant "clearly was not within reaching distance of his car at the time of the search." Id. at 344, 129 S.Ct. at 1719. Likewise, where the defendants in cases such as Belton and Thornton were arrested for drug offenses, "Gant was arrested for driving with a suspended license-an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." Id.
Similarly, in Knowles , a policeman stopped the defendant for speeding, issued him a citation rather than arresting him, and then conducted a full search of his car, finding marijuana and a "pot pipe," for which the officer then arrested him. 525 U.S. at 114, 119 S.Ct. at 486. The Supreme Court held that a routine traffic stop, such as that in which Knowles was detained for speeding, is "a relatively brief encounter and 'is more analogous to a so-called " Terry stop" ... than to a formal arrest.' " Id. at 117, 119 S.Ct. at 488 (quoting Berkemer v. McCarty , 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) ). While acknowledging that "concern for officer safety in this context may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search." Id. Nor was the second justification for authority to search incident to arrest present-the need to discover and preserve evidence. Id. at 118, 119 S.Ct. at 488. "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained," and "[n]o further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." Id.
Under Knowles and Gant , officers
may order out of a vehicle both the driver and any passengers; perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous; conduct a " Terry patdown" of the passenger compartment *705 of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon; and even conduct a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest.
Id. (citations omitted).
What police officers may not do, even when they conduct a search incident to a lawful custodial arrest of a recent occupant of a vehicle, is to search the vehicle when the arrestee is secured and not within reaching distance of the passenger compartment. See Gant , 556 U.S. at 343-44, 129 S.Ct. at 1719. Nor may they pat down the driver and passengers without reasonable suspicion that they may be armed and dangerous. See Knowles , 525 U.S. at 118, 119 S.Ct. at 488 (citing Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ).
The search and seizure of evidence in this case falls squarely within the scope of an unjustified search and seizure under Gant and Knowles , as well as McGee . Here, Officer Villa handcuffed appellant and "pretty much immediately" arrested Appellant for failing to signal a lane change and failing to signal a turn. Officer Villa then searched Appellant, placed him in the back of the marked unit, and returned to Appellant's truck to assist Officer Rogers, who had already started a purported inventory of the contents of the car. Because Appellant was arrested for the offenses of failing to signal a lane change and a turn, the officers who arrested him could not have expected to find further evidence of the crime for which he was arrested in the passenger compartment of his vehicle. See Gant, 556 U.S. at 343-44, 129 S.Ct. at 1719. And because Appellant was safely secured in police custody and had no further access to his vehicle by the time the officers started searching it, the officers could not have feared either that he would destroy evidence or that he might gain immediate control of a weapon. See Knowles , 525 U.S. at 117-18, 119 S.Ct. at 488.
The search of Appellant's vehicle incident to his arrest for failing to signal a lane change and a turn exceeded the proper scope of a warrantless search incident to that arrest. Therefore, the search violated the Fourth Amendment prohibition against unreasonable searches and seizures. The Supreme Court made this clear in Gant by stating,
A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals.
Gant, 556 U.S. at 345, 129 S.Ct. at 1720. That threat was realized in this case.
We sustain Appellant's fourth issue.
2. Inventory Search Exception
In his second issue, Appellant argues that the officers' search of his vehicle did not qualify as an inventory search and, accordingly, this could not be a ground for searching his car without a warrant. Appellant's truck was impounded after he was arrested. Inventory searches of automobiles subject to impounding are consistent with the Fourth Amendment and are a "well-defined exception to the warrant requirement" in that "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." Bertine , 479 U.S. at 371, 107 S.Ct. at 741 (citation omitted). "The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. The probable-cause approach *706 is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." South Dakota v. Opperman , 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 3097 n.5, 49 L.Ed.2d 1000 (1976) (citations omitted).
Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Bertine , 479 U.S. at 372, 107 S.Ct. at 741. "The policy or practice governing inventory searches should be designed to produce an inventory," and standardized criteria or established routine must regulate the opening of containers found during the search. Florida v. Wells , 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). "Nothing ... prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine , 479 U.S. at 375, 107 S.Ct. at 743 ; accord Gauldin v. State , 683 S.W.2d 411, 415 (Tex. Crim. App. 1984), overruled on other grounds by State v. Guzman , 959 S.W.2d 631, 633-34 (Tex. Crim. App. 1998) ("[P]olice who are engaged in a caretaking search may inventory the contents of a lawfully impounded vehicle.").
"By virtue of the transitory nature of automobiles," several factors make inventory searches reasonable under the Fourth Amendment after a vehicle's legal impoundment. Moberg v. State , 810 S.W.2d 190, 193 (Tex. Crim. App. 1991). These factors are: "(1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from inherent danger." Id. The inventory search must be "carried out in accordance with standard procedure in the local police department"; the search must be "limited in scope to the extent necessary to carry out the caretaking function"; and no evidence may be presented that the "search was a pretext concealing an investigatory police motive." Id. at 193-94 (citing Cady v. Dombrowski , 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ).
"[A]n inventory search must not deviate from police department policy," a burden which the State may satisfy by showing that an inventory policy existed and was followed. Id. at 195. "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"; nor may it be "turned into 'a purposeful and general means of discovering evidence of crime.' " Wells , 495 U.S. at 4, 110 S.Ct. at 1635 (quoting Bertine , 479 U.S. at 376, 107 S.Ct. at 743 (Blackmun, J., concurring)); accord Moberg , 810 S.W.2d at 196 ("The doctrine of 'inventory search' may not be invoked as a mere afterthought and used as a ruse or pretext for general rummaging in order to discover incriminating evidence.").
In Gauldin , police had arrested the defendant and had authority to impound the truck. 683 S.W.2d at 415. Two officers participated in the search of the vehicle. Id. Only one testified at trial. Id. The one who testified admitted that he did not complete the inventory of the vehicle and did not know if the other officer had. Id. Based on this, the Court of Criminal Appeals held, "[T]he record is devoid of any evidence that the police actually engaged in the caretaking function." Id.
In contrast, in Moskey , both officers involved in the arrest and inventory testified at the hearing.
*707 Moskey v. State , 333 S.W.3d 696, 701 (Tex. App.-Houston [1st Dist.] 2010, no pet.). They both testified about departmental procedure for searching a car. Id. One officer filled out an inventory form, indicating what items had been removed from the vehicle. Id. The form was admitted into evidence for the hearing. Id. The court held there was sufficient evidence of the caretaking function. Id.
The facts of this case bear a strong resemblance to Gauldin and very little resemblance to Moskey . Officers Villa and Rogers were present during Appellant's arrest. Officer Villa was the only one to testify at the motion to suppress hearing. See Gauldin , 683 S.W.2d at 415. He testified that Officer Rogers performed the inventory of the vehicle while he placed Appellant under arrest. See ids="9937419" index="110" url="https://cite.case.law/sw2d/683/411/#p415">id. Officer Villa testified that, after he finished dealing with Appellant, he returned to the truck to help Officer Rogers inventory the vehicle. Officer Rogers found drugs in the truck. Officer Villa then returned to the patrol car, ran a background check on Appellant, and then searched Appellant's wallet, finding more drugs.
Like Gauldin , the officer who testified was not the officer primarily performing the purported inventory. See ids="9937419" index="111" url="https://cite.case.law/sw2d/683/411/#p415">id. There was no testimony confirming the inventory was completed. See ids="9937419" index="112" url="https://cite.case.law/sw2d/683/411/#p415">id. ; cf. Moskey , 333 S.W.3d at 701. There was no testimony concerning what police procedure was for searching the vehicle or whether the procedure was followed. Cf. Moskey , 333 S.W.3d at 701. Finally, there was no testimony or other evidence of anything recovered from the vehicle other than evidence later used against the defendant. Cf. ids="7321401" index="115" url="https://cite.case.law/sw3d/333/696/#p701">id.
We hold the State failed to carry its burden of establishing the search qualified as an inventory pursuant to an impoundment of a vehicle. See Gauldin , 683 S.W.2d at 415 ; Moskey , 333 S.W.3d at 701. We sustain Appellant's second issue.[5]
C. Harm
We must next determine whether the trial court's erroneous denial of his motion to suppress harmed Appellant. See Gauldin , 683 S.W.2d at 415. We "must reverse a judgment of conviction or punishment unless [we] determine[ ] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a) ; accord Bonsignore v. State , 497 S.W.3d 563, 573 (Tex. App.-Fort Worth 2016, pet. ref'd). There is no record of Appellant's plea deal. His plea of guilt alone would not be sufficient to uphold his conviction. TEX. CODE CRIM. PROC. ANN . art. 1.15 (West 2005). Proof of the drugs found in his car would be sufficient to support his conviction. Appellant pleaded guilty only after the trial court denied his motion to suppress. When a trial court's erroneous ruling on a motion to suppress can contribute to the State's leverage in the plea bargaining process, harm is established. Holmes v. State , 323 S.W.3d 163, 174 (Tex. Crim. App. 2009), on reh'g (Feb. 24, 2010). Accordingly, we cannot conclude beyond a reasonable doubt that the trial court's error did not contribute to Appellant's decision to plead guilty. TEX. R. APP. P. 44.2(a).
The State has filed a motion to file a supplemental brief. It attaches the supplemental brief to the motion. We deny the motion because, even if we granted the motion, the State's argument in its brief is unavailing. The State argues that, because the motion to suppress sought only to suppress two of the three baggies of cocaine found by the police and because Appellant was charged with possession of less than a *708 gram of cocaine, Appellant cannot have suffered any harm from the erroneous denial of his motion. The State reasons that the remaining baggie would support Appellant's conviction, rendering the denial of his motion harmless.
For support, the State relies on a passage from Snyder v. State , 629 S.W.2d 930, 933 (Tex. Crim. App. 1982). The State quotes the following passage: "... if the guilty plea is supported by evidence independent of the matter contested in the pretrial motion, then any erroneous ruling on that motion does not vitiate the conviction." Id. This quoted passage begins with "Further, in Ferguson v. State ... it was held that...." Id. (citing Ferguson v. State , 571 S.W.2d 908, 910 (Tex. Crim. App. 1978) ). This passage in Snyder , then, is a recitation of the court's holding in Ferguson . See ids="9954093" index="125" url="https://cite.case.law/sw2d/571/908/#p910">id.
Ferguson was overruled on this very point over thirty years ago. See Morgan v. State , 688 S.W.2d 504, 506-07 (Tex. Crim. App. 1985). This passage in Snyder , then, is also no longer the law of Texas. See id. at 508 (Teague, J., concurring) (urging court to also expressly, instead of just implicitly, overrule Snyder ); see also TEX. R. APP. P. 38.1(i) ("The brief must contain ... appropriate citations to authorities").
It has long been the rule in Texas that, when a defendant pleads guilty after a trial court denies a motion to suppress and when the evidence subject to the motion could have given the State leverage in the plea bargaining process, then harm is established. See, e.g. , Kraft v. State , 762 S.W.2d 612, 613-14 (Tex. Crim. App. 1988) ; McKenna v. State , 780 S.W.2d 797, 798-800 (Tex. Crim. App. 1989) (applying Kraft to felony plea agreements); Holmes , 323 S.W.3d at 174 (applying Kraft and McKenna ).
Just because other, unspecified evidence, not subject to a motion to suppress, might have been legally sufficient to support a verdict of guilt had the cause gone to trial, does not mean that the evidence appellant did seek to suppress could not have been, in his decision whether to put the State to its proof, the straw that broke the proverbial camel's back.
Kraft , 762 S.W.2d at 614. Accordingly, we do not engage in speculating whether Appellant would have still pleaded guilty even if the motion to suppress had been granted. See id.
Conclusion
We deny the State's motion to file a supplemental brief. We reverse the judgment of the trial court and remand for a new trial.

See Tex. Health & Safety Code Ann . § 481.102(3)(D) (West Supp. 2017), § 481.115(a), (b) (West 2010).

See Marcopoulos v. State , 492 S.W.3d 773, 777, 780 (Tex. App.-Houston [1st Dist.] 2016), rev'd , 538 S.W.3d 596 (Tex. Crim. App. 2017).

See id. at 778-79.

See Marcopoulos v. State , 538 S.W.3d 596, 604 (Tex. Crim. App. 2017).

Because our rulings on Appellant's second and fourth issues are dispositive for this appeal, we do not reach Appellant's first and third issues.